**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL SALAS, | ) | CASE NO:   1:07-cv-00001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHAEL J. ASTRUE, | ) | NANCY A. VECCHIARELLI |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

Plaintiff Michael Salas ("Salas") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Salas's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends that the final decision of the Commissioner be VACATED and REMANDED so that the ALJ may issue a new decision containing a new finding with respect to the number of jobs available to someone with Salas's

limitations and a determination whether the number of jobs identified constitutes a significant number of jobs in the national economy as defined by 20 C.F.R. § 404.1566. If necessary, the ALJ may conduct a new hearing.

## I. Procedural History

On December 19, 2002, Salas filed an application for SSI alleging a disability onset date of September 1, 1995, claiming he was disabled due to a broken back, tuberculosis, asbestosis, and the need for a liver transplant. Salas's application was denied initially and upon reconsideration.[1] Salas timely requested an administrative hearing.

On October 27, 2005, Administrative Law Judge Peter Beekman ("ALJ") held a hearing during which Salas, represented by counsel, testified. Frank Cox, M.D., testified as the medical expert ("ME") and Deborah Lee testified as the vocational expert ("VE"). On January 26, 2006, the ALJ found Salas was able to perform a significant number of jobs in the national economy, and therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Salas filed an appeal to this Court.

On appeal, Salas claims the ALJ erred by: (1) improperly evaluating the medical opinions of treating physicians and consultative examiners; and (2) relying on the testimony of the VE.

## II. Evidence

*Personal and Vocational Evidence*

Born on August 25, 2003 and age fifty-two at the time of his administrative hearing,

---

[1] Salas had previously filed an application for SSI on April 29, 1996, a claim that was ultimately denied. (Tr. 66-77.)

2

Salas is a person "closely approaching advanced age." *See* 20 C.F.R. §§ 404.1563(d) & 416.963(d). Salas has a high school (GED) education and past relevant work as a house cleaner.

*Medical Evidence*

On October 27, 1999, Bharat C. Shah, M.D., treated Salas for complaints of back pain and bilateral leg pain. (Tr. 199.) Dr. Shah observed that Salas walks with difficulty but has a normal gait. (Tr. 201.) An x-ray revealed laminectomy at L4 and L5 and evidence of attempted fusion. (Tr. 203.)

Between December 20, 1999 and March 5, 2001, Dr. Shah's treatment notes indicate that Salas's pain improved with medication, but that he does "not think that [Salas] will be able to return to work, and therefore I do not consider that as one of his goals." (Tr. 194-98.) On May 14, 2001, Dr. Shah opined that Salas remained "disabled and not able to work." (Tr. 195.)

On March 7, 2002, Salas reported to Dr. Shah that his pain had worsened over the past three months with sitting and walking causing the worst pain. (Tr. 215.) Salas noted that the combination of Oxycontin and Elavil helped him keep the pain at a level of 3 on a scale of 0-10. *Id*.

On August 20, 2002, Salas was found to have hyperglycemia likely caused by a new onset of diabetes mellitus. (Tr. 468.)

On December 12, 2002, treating physician Jamile Wakim-Fleming, M.D., completed a Basic Medical form that indicated Salas had Hepatitis C for six years. (Tr. 597.) Dr. Wakim-Fleming observed that Salas was not affected in his ability to stand, walk, sit, lift, carry, push, pull, bend, reach, handle, see, hear, or speak. (Tr. 598.)

On April 25, 2003, A.K. Bhaiji, M.D., evaluated Salas at the request of the State Agency.

(Tr. Tr. 275-82.) Dr. Bhaiji found no abnormalities with Salas's head, neck, lungs, and abdomen. (Tr. 276.) There was tenderness in the lumbar spine with flexion and extension, but none in the thoracic and cervical spine. *Id*. Salas had no problems grasping or manipulating and the range of motion in all joints of the upper and lower extremities. (Tr. 276-77.) Salas's gait was also normal. *Id*. Dr. Bhaiji diagnosed diabetes, Hepatitis C with cirrhosis of the liver, hypothyroidism, status post back injury and surgery, and tuberculosis. *Id*. He did not believe Salas would have any difficulty with work-related physical activities such as sitting, standing handling objects, hearing, or speaking, but "may" have difficulty walking, lifting, and carrying objects. *Id*.

On June 2, 2003, treating physician Jessica R. Griggs, D.O., noted that Salas was "unemployable," although she found Salas's medical conditions had no effect on his ability to stand, sit, walk, lift or carry. (Tr. 596.) In addition, Dr. Griggs did not find any significant limitations in any other area of functioning. *Id*.

On June 20, 2003, Salas began receiving care from Rita A. Abbud, M.D., for Hepatitis C. (Tr. 291.) Dr. Abbud diagnosed CAHC (chronic active hepatitis C) and prescribed Pegasys. (Tr. 290.) Abbud continued to see Salas for CAHC and other liver-related problems. (Tr. 286-89, 503-505, 549, 558-59.)

On July 21, 2003, Salas was examined due to neck pain stemming from an assault. (Tr. 413.) The exam revealed a non-displaced fracture of the distal left clavicle and a comminuted fracture of the left scapular blade. *Id*.

On August 8, 2003, treating physician Lavinia M. Cozmin described Salas's medical conditions as insulin requiring diabetes mellitus (type II), hepatitis C, cirrhosis of the liver,

4

history of chronic alcoholism, leukopenia, and thrombocytosis.  (Tr. 593.)  Dr. Cozmin found that Salas's ability to stand, walk, sit, see, hear, and speak were not affected.  (Tr. 594.)  She further opined that Salas could lift/carry up to five pounds frequently and occasionally.  *Id*.  Salas was not significantly limited in his ability to bend, reach, handle, or perform repetitive foot movements.  *Id*.  His ability to push or pull was moderately limited.  *Id*.  Nevertheless, Dr. Cozmin concluded that Salas was unemployable.  *Id*.

On August 9, 2003, a CT scan revealed "a cirrhotic hepatic morphology with a lobulated margin to an enlarged left lobe."  (Tr. 313.)  It also showed an enlargement of the spleen suggesting portal hypertension.  *Id*.

From September 22, 2003 until January 28, 2004, treatment notes indicate Salas was seen for several problems including pancytopenia secondary to cirrhosis, hypersplenism, and portal hypertension.  (Tr. 532-34.)  A scheduled surgery was postponed due to coagulation problems.  (Tr. 533.)

On November 20, 2003, Salas was evaluated by Alvin J. Schonfeld, D.O., a pulmonologist, concerning his work-related lung disease.  (Tr. 500-01.)  Based on his occupational exposure, physical examinations results and chest x-ray, Dr. Schonfeld diagnosed bilateral asbestosis.  *Id*.

On December 17, 2003, Adi A. Gerblich, M.D., examined Salas at the request of the State Agency.  (Tr. 510-28.)  Dr. Gerblich noted diminished range of motion in the left shoulder.  (Tr. 511.)  Dr. Gerblich concluded that Salas suffered from no significant limitations from a pulmonary standpoint and did not believe Salas would have any difficulty performing the functions of daily living or walking.  (Tr. 512.)  He did note, however, that "handling of objects

5

may be difficult if the left arm is involved." *Id*.

On March 31, 2004, Dr. Abbud declined to complete a Medical Source Statement and deferred giving an opinion with respect to Salas's limitations to Dr. Shah. (Tr. 600-01.) According to the ALJ, Dr. Abbud's comments were illegible. (Tr. 28.) Salas deciphers Dr. Abbud's comments as "I am treating patient for CAHC & liver cirrhosis which cause fatigue & tiredness." (Pl.'s Br. at 16.)

*Hearing Testimony*

Salas testified at the hearing as follows. His most debilitating condition is due to his back problems, followed second by asbestosis. (Tr. 47.) He has undergone four major surgeries on his spine and several minor ones. (Tr. 50.) Epidural injections help his pain, but only for a few days. (Tr. 48.) He last used alcohol or drugs in August of 2003. *Id*. He could stand for about ten to fifteen minutes before requiring a break. (Tr. 50.)

The ME testified that Salas suffered from the following impairments: controlled diabetes mellitus; Hepatitis C; hypersplenism; a calcified gall bladder or a gall bladder containing multiple stones; a history of back problems; clinically insignificant asbestosis; and possible cirrhosis and pleural hypertension. (Tr. 51-54.) The ME testified that Salas's impairments, either singularly or in combination, do not meet or equal any of the listings. (Tr. 54.) He further opined that Salas should be limited to light, low-stress work but did not have any sitting, standing, walking, or lifting limitations beyond light work. *Id*. The ME explained that the limitation to low stress work meant Salas should be limited routine, simple tasks that did not require high production quotas and limited to non-confrontational situations. (Tr. 55.) The ME also added that Salas should not be required to reach above shoulder level with his left arm. *Id*.

The ME also stated that nothing in the record explains Salas's complaints of fatigue.  (Tr. 56.)

The VE testified that Salas's past employment most closely matched the description of cleaner/housekeeping from the Dictionary of Occupational Titles, which is a classified as light exertional work, but Salas performed the job at the medium level.  (Tr. 58.)  The ALJ asked the VE to consider a hypothetical person who could perform light work with moderate limitations in his ability to push or pull.  *Id*.  Further, such person could not perform work requiring work above the shoulder level, especially with the left arm.  *Id*.  In addition, such person should not be exposed to extreme temperatures, dust, smoke, or fumes.  *Id*.  The hypothetical person should be limited to repetitive work that does not involve confrontational situations and involves only occasional bending or stooping.  (Tr. 58-59.)  The VE responded that the hypothetical person would be able to perform the job of cashier II, which is categorized as light and unskilled.  (Tr. 59.)  According to the VE, there are 54,760 such jobs in Northeast Ohio, a number which he would reduce by twenty (20) percent to exclude cashier jobs that are performed above the light exertional level.  *Id*.  The VE also identified two other jobs – counter clerk and mail clerk – that are light and unskilled that the hypothetical person could perform.  The number of these jobs in Northeast Ohio are 5,600 and 2,200 respectively. (Tr. 60.)

Upon examination by Salas's attorney, the VE testified that there is always a possibility of confrontation between a cashier or counter clerk and a customer.  (Tr. 61-63.)  The VE also stated that occasional above the shoulder reaching could be necessary for cashiers and counter clerks.  (Tr. 62.)  The job of mail clerk may also require occasional overhead reaching depending on the layout of the workstation, but the VE could not say what percentage of mail clerk jobs would require overhead reaching.  (Tr. 63-64.)

7

### III. Standard for Disability

A claimant is entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Salas established a medically determinable, severe impairment, due to degenerative disc disease, chronic liver disease, history of bone fractures, cirrhosis, diabetes mellitus, hypersplenism, and a history of substance abuse, but his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Salas is unable to perform his past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Salas is not disabled.

### V. Standard of Review

The court's review of the Commissioner's decision is limited to determining whether there is "substantial evidence" to support the Commissioner's decision and whether the Commissioner employed proper legal standards in reaching his or her conclusion. Because the petitioner's request for review has been rejected, the decision of the ALJ is the final decision of

the Commissioner and is subject to this court's review. Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). If substantial evidence for the Commissioner's decision exists, the Court's "inquiry must terminate" and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Furthermore, if the Commissioner's decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the disputed issues of fact differently. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

## VI. Analysis

Salas claims the ALJ erred by: (1) improperly evaluating the medical opinions of treating physicians and consultative examiners; and (2) relying on the testimony of the VE. Each will be discussed in turn.

### *Evaluation of Medical Opinions*

Salas argues that the ALJ improperly evaluated the medical opinions of treating physicians and consultative examiners. (Pl.'s Br. at 14-18.) First, Salas avers that the ALJ erred by ignoring the opinion of treating physician Dr. Abbud. (Pl.'s Br. at 15-16.) The ALJ stated that he accorded no persuasive weight to a questionnaire signed by Dr. Abbud, a treating physician, because her comments were illegible. (Tr. 28.) Salas asserts that the comments in question read as follows: "I am treating patient for CAHC [chronic active hepatitis C] & liver

9

cirrhosis which cause fatigue & tiredness."[2] (Pl.'s Br. at 16.)

Without addressing whether it was erroneous for the ALJ to disregard Dr. Abbud's comments as illegible, his failure to consider them is harmless. First, the record was replete with other medical opinions diagnosing Salas with hepatitis C and cirrhosis of the liver. (Tr. 276-77, 593, 597.) Second, the ALJ found that Salas suffered from several severe impairments , including chronic liver disease and cirrhosis. (Tr. 32.) Thus, while the ALJ may not have considered the diagnosis proffered by Dr. Abbud, he did not reject her diagnosis and actually adopted it.

The only other significant aspect of Dr. Abbud's commentary is that Salas's ailments cause fatigue, but Dr. Abbud does not explain the extent of the fatigue or state any resulting functional limitations that may be caused by the fatigue. By contrast, the ALJ considered the opinion of treating physician Dr. Cozmin, who also stated that Salas suffered from fatigue due to chronic liver disease and diabetes mellitus resulting in moderate limitations in his ability to push and/or pull. (Tr. 29, 594.) Further, the ALJ noted that the ME testified that interferon treatment for liver disease can cause fatigue, but observed that Salas was not currently receiving interferon treatment. (Tr. 29.) The ALJ found Dr. Cozmin's opinion regarding fatigue to be less persuasive than the opinion of Dr. Wakim-Fleming, a treating specialist in hepatology, who indicated that Salas did not suffer from any functional limitations. (Tr. 29, 598.)

The ALJ's analysis of Salas's alleged fatigue symptoms adequately addressed Dr. Abbud's opinion, albeit indirectly, by comparing Dr. Cozmin's similar opinion and finding it

---

[2] Although Dr. Abbud's comments are difficult to decipher, Salas's reading appears to be accurate. (Tr. 601.)

less persuasive than the opinion of a specialist. (Tr. 29.) Thus, while the ALJ's stated reason for rejecting Dr. Abbud's opinion was its illegibility, the ALJ provided sufficient reasons for finding that Salas was not limited by fatigue. The ALJ, therefore, "met the goal of [20 C.F.R.] § 404.1527(d)(2) – the provision of the procedural safeguard of reasons – even though [he] has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006) (finding the ALJ adequately addressed the opinions of two treating sources by indirectly attacking both the consistency of those opinions with the other record evidence and their supportability) (internal citations omitted); *cf. Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (distinguishing its holding from *Nelson* and finding the ALJ's complete failure to mention a treating physician's opinion plainly violated the terms of 20 C.F.R. § 404.1527(d)(2)). For the foregoing reasons, the ALJ did not err by ascribing no weight to Dr. Abbud's opinion.

Salas also argues that the ALJ erred by rejecting the opinion of Dr. Gerblich, a consultative examiner, without explaining why. (Pl.'s Br. at 17-18.) Dr. Gerblich stated that he did not believe Salas would have any difficulty performing functions relevant to daily living or walking, but opined that Salas "may" have difficulty handling objects with his left arm. (Tr. 512.) Salas avers that the ALJ's finding that Salas could not lift overhead with his shoulder is not the equivalent of Dr. Gerblich's "finding" that relates to handling. Salas's argument fails for two reasons. First, Dr. Gerblich's statement concerning potential handling difficulties cannot reasonably be characterized as a finding. His statement that Salas "may" have difficulty handling with the left hand lacks any definitive resolve or firmness and is the equivalent of stating that he is unsure whether Salas would have difficulty handling. In addition, even if Dr.

11

Gerblich's statement could be construed as an opinion or finding, Salas has failed to cite any legal support for his contention that an ALJ is required to set forth the reason for failing to adopt a consultative examiner's opinion.[3]  Therefore, Salas's argument is without merit.

**Reliance on VE Testimony**

Salas contends that the ALJ erred by relying on the testimony of the VE, because the VE's testimony does not support the ALJ's findings at Step Five.  (Pl.'s Br. at 11-14.)  Because the ALJ found that Salas suffers from severe impairments preventing his return to past relevant work, Salas argues that the burden shifts to the Commissioner to demonstrate that there are a significant number of jobs in the national and regional economy that a person with his limitations could perform.  (Pl.'s Br. at 11.)  Salas's statement of the law is unassailable.  *See, e.g., Young v. Califano*, 633 F.2d 469, 470 (6th Cir. 1980) ("When an applicant for disability benefits establishes his inability to return to his former occupation, the burden shifts to the Secretary to show that the plaintiff retains residual capabilities which would permit him to engage in other substantial gainful employment."); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990) (a claimant establishes a *prima facie* case of disability by showing that he has a medical basis for an impairment that prevents him from engaging in his particular occupation, at which point it becomes the Secretary's burden to establish the claimant's ability to work);

---

[3] Although Salas cites *Shepherd v. Secretary of Health & Human Services*, 758 F.2d 196, 197 (6th Cir. 1985), his reliance on this decision is misplaced.  In *Shepherd*, the Sixth Circuit did not establish a rule with respect to consultative examiners analogous to 20 C.F.R. § 404.1527(d)(2), which requires an ALJ to give good reasons for the weight given to treating source opinions.  The dispositive issue in *Shepherd* was whether the Appeals Council erred by overturning an ALJ's decision when such decision was not based on any of the following: (1) abuse of discretion by the ALJ; (2) error of law by the ALJ; (3) lack of substantial evidence to support the ALJ; or (4) presence of a broad policy or procedural issue possibly affecting the general public interest.  *Id*.

*Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794 (6th Cir. 2004).

In his findings, the ALJ remarked that Salas should be "limited to simple, routine tasks in an atmosphere *free of confrontation*, arbitration or negotiation." (emphasis added) (Tr. 32.) Based on the VE's testimony, the ALJ found that a person with Salas's limitations could perform the jobs of cashier II, counter clerk, and mail clerk. (Tr. 31.) Salas argues that the ALJ should not have included cashier II and counter clerk as jobs that Salas was capable of performing. Salas's argument is based on the VE's testimony that the possibility of confrontation with a customer cannot be ruled out with respect to either of these positions. (Pl.'s Br. at 13; Tr. 61-63.) The Commissioner concedes that someone with Salas's limitations could not perform the cashier II or counter clerk jobs. (Def.'s Br. at 4.)

The Commissioner, however, argues that Salas failed to challenge the testimony that the hypothetical person could perform the job of mail clerk, and the VE testified there are 2,200 such jobs in Northeast Ohio. (Def.'s Br. at 4; Tr. 60.) The Commissioner argues that, based on case law, 2,200 jobs in Northeast Ohio constitute a significant number of jobs. (Def.'s Br. at 4-5.) In his Brief on the Merits, Salas does not question whether someone with his limitations could perform the mail clerk job.[4] (Pl.'s Br. at 13.) Instead, Salas argues that the ALJ made no finding that the 2,200 mail clerk jobs, on their own, constitute a significant number. *Id*.

In *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), the Sixth Circuit declined to establish a "magic number" that would define the number of jobs that constitute a "significant

---

[4] In his Reply Brief, Salas, for the first time, argues that the mail clerk position is inconsistent with the ALJ's finding that he could not lift overhead with the left shoulder. (Doc. No. 15.) Arguments raised for the first time in a Reply brief are deemed waived. *See Ramirez-Rodriguez v. Gonzales*, 238 Fed. Appx. 77, 79 n. 1 (6th Cir. 2007), *citing United States v. Kakos*, 483 F.3d 441, 446 n.4 (6th Cir. 2007).

number of jobs" within the meaning of the regulations. Instead, the Sixth Circuit observed that:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. *The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.*

*Id.* (emphasis added); *accord Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1174 (^th Cir. 1990); *Lenon v. Apfel*, 191 F. Supp.2d 968, 979 (W.D. Tenn. 2001).

In his decision, the ALJ found that the three jobs identified by the VE together constituted a significant number of jobs.[5] (Tr. 31, 33.) The ALJ never found that 2,200 mail clerk jobs, standing alone, constituted a significant number of jobs. The Commissioner cites two cases where a lesser number of jobs were considered sufficient to constitute a significant number. *See Hall*, 837 F.2d at 275; *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369 (6th Cir. 2006). This Court is aware of many other decisions where an ALJ found jobs numbering less than 2,200 were found to constitute a significant number of jobs. Nevertheless, the Sixth Circuit has cautioned against adopting a bright line rule. *Hall*, 837 F.2d at 275.

The Commissioner argues that a "remand would be an idle and useless formality." (Def.'s Br. at 5.) While it is entirely possible, perhaps even likely, that an ALJ would find 2,200 jobs constitute a significant number, such a determination properly lies with the ALJ, who is in the best position to apply the statutory requirement to a claimant's particular factual situation and to consider the criteria quoted above. Undoubtedly there are situations where a remand

---

[5] The ALJ's opinion, based on the VE's testimony, identifies 54,760 cashier II jobs (less twenty percent), 5,600 counter clerk jobs, and 2,200 mail clerk jobs. (Tr. 31, 60.)

14

would indeed be an idle and useless formality due to the presence of a vast number of jobs that undoubtedly constitute a significant number. In the present action, however, the Court declines to find that 2,200 jobs constitutes a significant number of jobs, especially where the ALJ's finding was based on the presence of over 50,000 jobs. The Court further declines to presume that an ALJ, upon remand, would necessarily find 2,200 jobs constitute a significant number. Therefore, this action should be remanded so that the ALJ may issue a new decision containing a new finding with respect to the number of jobs available to someone with Salas's limitations and a determination whether the number of jobs identified constitutes a significant number of jobs in the national economy as defined by 20 C.F.R. § 404.1566. If necessary, the ALJ may conduct a new hearing.

Salas also argues that the ALJ erred by omitting certain vocational factors from the hypothetical he posed to the VE. (Pl.'s Br. at 13-14.) Specifically, the ALJ did not include Salas's age, education, and work experience in his hypothetical.[6] (Tr. 58.) Salas argues that this deficiency is cause for remand or reversal and relies on the Sixth Circuit's holding in *Webb v. Commissioner of Social Security*, 368 F.3d 629 (6th Cir. 2004). Salas's reliance on *Webb* is misplaced. In *Webb*, the Sixth Circuit reversed a district court that had held an ALJ is "only permitted to rely upon vocational expert testimony regarding the availability of employment if the hypothetical questions eliciting that testimony listed the claimant's medical conditions." *Id*.

---

[6] A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If a VE testifies in response to a hypothetical question that precisely sets forth all of the claimant's impairments, his response constitutes substantial evidence for a finding of either disability or nondisability. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1988).

15

at 631. The Sixth Circuit found that hypothetical questions need not list all of a claimant's medical conditions and need only reference all of a claimant's limitations. *Id.* at 633. Although the Sixth Circuit cited the applicable regulations that state the Commissioner will consider a claimant's RFC, age, education, and work experience at Step Five, it did not decide whether failure to include age, education, or past work experience in a hypothetical posed to a VE is adequate grounds for a remand. *Id.*

Most of the cases cited by the Commissioner are also inapposite with the exception of *Chandler v. Secretary of Health & Human Services*, 1994 U.S. App. LEXIS 33833 at *10 (6th Cir. Nov. 29, 1994). In *Chandler*, the Sixth Circuit found no error in the ALJ's hypothetical that omitted several of claimant's conditions because: (1) the VE was aware of them due to claimant's testimony and (2) the claimant could have questioned the VE concerning the impact of these specific factors. *Id.* Although the omitted factors dealt with mental impairments rather than age, education, or past work experience, if the VE is aware of these factors, failure to include them in the hypothetical is harmless. With respect to education and past work experience, the VE heard Salas testify about his education and specifically asked Salas a few questions about his past employment. (Tr. 48, 57-58.) Also, Salas's age was apparent from his testimony that he celebrated his fiftieth birthday two years prior to the heaing. (Tr. 48.) *See, e.g., Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("In many cases, imputing knowledge to the [VE] of everything in the exhibits and testimony from the hearing will be sufficient to allow an ALJ to assume that the [VE] included all of these limitations in his assessment of the number of jobs that the applicant can perform.")

Finally, "[t]he mere fact that the [ALJ] did not make express that the age, education and

16

work experience of this particular claimant formed the basis of the [ALJ]'s hypothetical to the [VE] will not serve to invalidate the decision of the Secretary." *Preston v. Sullivan*, 785 F. Supp. 1267, 1271 (S.D. Ohio 1992) (finding that the ALJ's failure to make the express assumption that it was the claimant's age, education, and work experience that was being used for the vocational profile was harmless.) Because the VE was not ignorant of Salas's age, education, and past work experience, the ALJ's failure to expressly include these factors in his hypothetical was harmless and did not render the hypothetical inaccurate. Therefore, Salas's argument that the ALJ erroneously relied on testimony given in response to an inaccurate hypothetical is without merit.

### VII. Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to sentence four, for further proceedings consistent with this Report and Recommendation. Upon remand, the ALJ shall issue a new decision containing a new finding with respect to the number of jobs available to someone with Salas's limitations and a determination whether the number of jobs identified constitutes a significant number of jobs in the national economy as defined by 20 C.F.R. § 404.1566. If necessary, the ALJ may conduct a new hearing.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: December 5, 2007

**OBJECTIONS**

  Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).